<hr/>

LINDSEY v. FLEBBE ET AL.

1. CONTRACTS.

A contract can be made by the delivery of a memorandum expressing its terms if it be accepted by the other party and acted upon by both.

2. SAME.

Receiving without objection and acting on bills of lading issued by common carriers containing statements limiting their common law liability is sufficient evidence of the shipper's assent to their conditions.

3. SUSPENSION OF PAYMENT.

A person is insolvent and suspends payment when he is unable and fails to pay his debts in the due and ordinary course of his business.

*Error to the District Court of Arapahoe County.*

Messrs. BICKSLER & McLEAN and Messrs. MONTGOMERY, CHARLTON & HALL, for plaintiff in error.

Mr. J. E. ROBINSON, for defendants in error.

BISSELL, P. J., delivered the opinion of the court.

On the 23d of December, 1892, Lindsey brought this suit against the defendants, Flebbe & Company, who were doing business as a copartnership in the city of Denver. The prin-

cipal question must be settled by a determination of the right of the plaintiff to bring suit when he did, for according to the terms of the original sale the credit had not then expired, unless there had been a breach of another condition annexed to the agreement.

In the spring of 1892, and about the month of March, Lindsey's agent sold the goods to Flebbe & Company. As is usual in such cases, the salesman exhibited his samples, stated his prices, and the vendee selected the style, class and kinds of goods which he desired, the date of the shipment was fixed and the terms of the sale generally specified. During this part of the transaction, the salesman made a memorandum of the order, and subsequently on the order blank of the firm made out in triplicate a list of the goods, the prices specified, the date of shipment and the route by which they were to come. One of these was kept by the salesman, the other was delivered to the purchaser and the third was sent to the house. On this memorandum bill was this statement: " This bill becomes due immediately when purchaser suspends payment, removes or is closing out." The terms specified on this memorandum bill as to payment were " December 1st— thirty days." Manifestly, unless this credit was modified by a breach of the condition first stated, and that condition was a part of the contract between the parties, the suit was prematurely brought and the defendants were entitled to judgment. Concerning the other terms of the sale nothing need be said, since they are of no importance in the resolution of the controversy. To sustain his contention that this condition was a part of the original contract, and that Flebbe & Company were bound by it, the plaintiff gave evidence supporting what has previously been stated concerning the transaction, and also that Lindsey had for some time been doing business with Flebbe & Company. During this time, all goods which were sold to Flebbe & Company were sold to them under circumstances like those which surrounded this transaction, and were billed to them on order blanks of the same sort which contained the same condition. The

transactions were six or eight in number. In addition to this fact, the plaintiff showed that the invoices which were sent from the house when the goods were shipped were duplicates in form and substance of the original order blanks and contained precisely the same condition. It will be remembered that these goods were sold in March, to be shipped in the ensuing months of August and September. The goods were shipped. Afterwards some question arose between the salesman and the firm concerning the nondelivery of part of the stuff which had been ordered. To settle the question whether there had been any failure to deliver or to invoice what was sold, the parties resorted to the order blank which was made out at the time of the sale in March. Flebbe & Company thus recognized the order blank as the contract entered into between them and Lindsey.

During the trial, in order to sustain his contention that there had been a breach of the condition by the suspension of payment by the firm of their commercial obligations, the plaintiff offered in evidence the records in several suits brought against Flebbe & Company. These records showed that the firm was sued upon several past due promissory notes and upon overdue book accounts which were due at the time the present action was instituted, and which the firm failed to pay. The records were all excluded, and the exclusion is assigned for error. The plaintiff likewise attempted to prove that previous to suing out his attachment, he called upon Flebbe & Company and demanded payment of his claim, and at that time found sundry other parties at the store seeking payment of their demands, who subsequently brought suit against the concern and attached the stock. These attachments were in the records which the plaintiff offered to produce. This testimony was excluded. On the conclusion of the plaintiff's case, the court directed the jury to find a verdict for the defendant and dismissed the attachment, and rendered judgment against the plaintiff for costs. On this judgment the plaintiff predicates error and has brought the case up here for review.

The court erred on both of the principal propositions which are the subject of consideration. A binding contract *inter partes* can undoubtedly be made by the delivery of a memorandum expressing its terms if it be accepted by the other and acted on by both. It has been adjudged in many well considered cases that the acceptance without objection of a memorandum which contains limitations, conditions and terms, will establish the assent of the receiver to the terms expressed in the paper, unless in apt time and in some form he dissents from the conditions. There are probably few cases in which this proposition has been resisted with more vigor than in those suits which have been based on bills of lading issued by common carriers containing conditions limiting their common law liability. It must be conceded that most of the decisions in this class of cases have upheld the limitation and have bound the shipper when he has accepted the bill of lading and made no objection to its terms. *McMillan et al. v. M. S. & N. I. R. R. Co.*, 16 Mich. 79; *Grace v. Adams et al.*, 100 Mass. 505; *Boorman v. The American Express Co.*, 21 Wis. 154; *Dent et al. v. North Am. S. S. Co.*, 49 N. Y. 390.

In all these adjudications the courts have held that to act under such a bill when it has been received without objection is sufficient evidence of the shipper's assent to its conditions. In many of them the consignor was held liable, though the terms and conditions were never brought to his notice. This is the case with various other contracts which are familiar to the profession, and bills of sale, mortgages, deeds and policies of insurance are used as illustrations of various contracts which after acceptance bind the parties, however strongly they may testify that they were without knowledge of the contents. The law presumes, in the absence of fraud, that the party read it, or was otherwise informed of its contents, and there was therefore imposed upon him the duty to protest if he desired to escape the force of its conditions. When once the memorandum is proven to have been delivered, the burden is cast on the receiver to establish those facts which shall release him

from the liability which the law otherwise casts upon him. The facts of the present case bring it squarely within the purview of these decisions. The order blank containing this condition was delivered to the vendee; he held it without objection for months; he received an invoice from the house with the shipment of the goods in August and September which contained precisely the same condition, and to this he made no objection; the order was subsequently used by the salesman and the vendees for the purpose of ascertaining the terms and the conditions of the sale, thereby strongly evidencing the fact that it was upon it that the vendees relied to ascertain what they had bought, and the terms upon which they had bought it. A stronger case of assent to a contract containing conditions has seldom been presented. We must, therefore, conclude that the conditions at the top of the paper were a part of the agreement under which the goods were sold, and that if the plaintiff either proved or offered evidence which tended to establish a breach of the condition, he was entitled to go to the jury upon the question of a breach, and that being established, to maintain his suit.

The only remaining question is as to the breach of the condition. It is plain from the record that at the time of the institution of this suit, Flebbe & Company had ceased to do business, had failed to pay their maturing obligations, and were practically in the hands of the sheriff and their commercial venture at an end. The only question is whether the evidence which the plaintiff offered tended to show a suspension of payment within the proper definition of that term. What is a suspension of payment has been a subject of much controversy in the courts, but in general it may be said that a person is insolvent and suspends payment when he is unable and fails to pay his debts in the due and ordinary course of his business. *Buchanan v. Smith*, 16 Wallace, 277 ; *In re Wolf*, 4 Sawyer, 168; *Thompson v. Thompson et al.*, 4 Cush. 127 ; *Lee v. Kilburn*, 3 Gray, 594; *Sterrett et al. v. Third Nat'l Bank of Buffalo*, 53 N. Y. Supreme Court Reports, 22 ; *In re Thompson & McClallan*, 3 Nat'l Bank Reg. R. 184; *In*

*re Hercules Mutual Life Assurance Society*, 6.Nat'l Bank Reg. R. 338; *McLean et al. v. Brown, Weber & Co.*, 4 Nat'l Bank Reg. R. 585.

According to the course of the decisions in the bankruptcy cases, Flebbe & Company committed an act of bankruptcy when they failed to pay the note due S. R. Amter on the 18th of December, 1892. Of course, under the bankruptcy act there was a limitation that the failure to pay should continue for fourteen days where there was no element of fraud in the transaction. This limitation, however, is of no concern in the present question. When a merchant fails to pay his note when it is due, fails to pay his book accounts when they mature, and is sued on the claims, and assents to the entry of judgment in the actions brought against him, he undoubtedly furnishes incontrovertible evidence that he has suspended payment. In the several suits brought against them, the firm admitted the debts, assented to the entry of judgment, and when the present action was brought, their store and stock were in the possession of the sheriff. If this does not constitute a suspension of payment in the ordinary commercial acceptation of the term, it will be extremely difficult to state a case which would be brought within the usual definition of that word. We conclude that the records which were offered were legitimate proof of the suspension of payment, and if the evidence was unexplained it would establish a breach of the condition expressed in the contract order under which the goods were sold. The evidence which the plaintiff offered of a demand for the settlement of his account, the presence of other parties seeking payment, and the custody of the store were matters which could be legitimately produced in support of the plaintiff's contention that the firm had suspended payment.

For the errors committed by the court in rejecting this testimony, and in directing a verdict for the plaintiff on the proof, the case must be reversed and remanded.

*Reversed.*